**PELTON GRAHAM LLC**
Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.peltongraham.com

**STEPHEN D. HANS & ASSOCIATES P.C.**
Stephen D. Hans (SH 0798)
Nils C. Shillito (NS 6755)
30-30 Northern Blvd., Suite 401
Long Island City, New York 11101
Telephone:  (718) 275 6700
www.hansassociates.com

*Attorneys for Plaintiffs and the putative*
*FLSA Collective and Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **JOSE ANTONIO ISLAS PEREZ, FERNANDO RODRIGUEZ SANCHEZ, ENRIQUE ROMERO AGUSTIN, GERMAN CUAZITL BETANCURT, BERNARDO REVILLA GUTIERREZ, FNINA BOURHIM, and JACINTO TORRES PEREZ, Individually and on Behalf of All Others Similarly Situated,**<br><br>　　　　　　　　**Plaintiffs,**<br><br>-against-<br><br>**89TH MARKET INC., 8TH STREET MARKET CORP., HEAVENLY MARKET INC. I, 22 2ND AVE FOOD MARKET CORP., HEAVENLY FOOD MARKET 11TH AVENUE, INC., HEAVENLY MARKET SULLIVAN INC., ABDULLAH SALEH MUSLEH ALKABADI, MOHAMMED A. MUSLEH, GAMAL A. MUSLEH, ALI A. MUSLEH, OMAR A. ALKABADI, MAGED A. ALKABADI, WALEED ABDULLAH SALEH, AHMED A. SALEH, and DOES NO. 1 through NO. 20, Jointly and Severally,**<br><br>　　　　　　　　**Defendants.** | **CLASS & COLLECTIVE ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

1

Jose Antonio Islas Perez, Fernando Rodriguez Sanchez, Enrique Romero Agustin, German Cuazitl Betancurt, Bernardo Revilla Gutierrez, Fnina Bourhim, and Jacinto Torres Perez (together the "Plaintiffs"), individually and on behalf of all others similarly situated, as class and collective representatives, upon personal knowledge as to themselves and upon information and belief as to other matters, allege as follows:

## NATURE OF THE ACTION

1.      Plaintiffs are former non-management employees who worked for Defendants as general grocery and deli workers throughout various locations of Defendants' delis throughout the New York City area. During the relevant time period, for their work for Defendants, Plaintiffs were not paid the legally required minimum wage for all hours worked and were not paid overtime premiums for all hours worked over forty (40) in a given workweek.

2.      Plaintiffs bring this action to recover overtime premium pay owed to them pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq.* Plaintiffs also bring claims for unpaid minimum wage, unpaid spread of hours premiums, and for failure to provide proper wage notices and wage statements pursuant to NYLL §§ 190 *et seq.* and the supporting regulations.

3.      Plaintiffs bring their FLSA claims on behalf of themselves and all other similarly situated employees of Defendants and their NYLL claims on behalf of themselves and a Federal Rule of Civil Procedure 23 class of all non-management employees working for Defendants in New York during the six (6)-year period, plus COVID-19 tolling, preceding the filing of this complaint.

4.      In addition, Plaintiff Fnina Bourhim brings an individual claim for retaliation under the section 215(a)(3) of the FLSA and under section 215 of the NYLL.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants' businesses are located in this district and a substantial part of the events or omissions giving rise to the claims occurred in this district.

7.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

8.      On March 20, 2020, New York Governor Andrew M. Cuomo signed Executive Order 202.8 in an effort to stem the spread of COVID-19, which tolls for thirty (30) days "any specific time limit[s] for the commencement, filing, or service of any legal action, notice, motion or other process or proceeding" under any New York State laws or court procedural rules. The thirty (30)-day tolling period began on March 20, 2020 and continued until April 19, 2020. On April 7, 2020, Governor Cuomo signed Executive Order 202.14, which extended the tolling period to May 7, 2020. Subsequently, on May 7, 2020, Governor Cuomo issued Executive Order 202.28, tolling all statutes of limitations for an additional thirty (30) days through June 6, 2020. On June 6, 2020, Governor Cuomo issued Executive Order 202.38, tolling all statutes of limitations until July 6, 2020. On July 7, 2020, Governor Cuomo issued Executive Order 202.48 tolling all statutes of limitations until August 5, 2020. On August 5, 2020, Governor Cuomo issued Executive Order 202.55, which tolled all statutes of limitations until September 4, 2020. On September 4, 2020,

Governor Cuomo signed Executive Order 202.60, which extended the tolling period an additional thirty (30) days to October 4, 2020. On October 4, 2020, Governor Cuomo issued Executive Order 202.67, which extended the tolling period to November 3, 2020. In total, the Executive Orders set forth herein provided for a toll of two hundred and twenty-eight (228) days.

## THE PARTIES

**Plaintiffs:**

9.    **Plaintiff German Cuazitl Betancurt ("Cuazitl")**, was at all relevant times, an adult individual residing in Bronx County, New York.

10.    Throughout the relevant time period, Cuazitl performed work for Defendants at 8TH Street Market Corp. d/b/a "Heavenly Market & Café" located at 44 East 8th Street, New York, New York 10003; at 89TH Market Inc. d/b/a "Heavenly Market" located at 1692 York Ave, New York, New York 10128; and Heavenly Market IV Inc. d/b/a "Heavenly Market IV" located at 1760 3rd Ave New York, New York 10029.

11.    **Plaintiff Jose Antonio Islas Perez ("Islas")**, was at all relevant times, an adult individual residing in Kings County, New York.

12.    Throughout the relevant time period, Islas performed work for Defendants at Heavenly Market IV Inc. d/b/a "Heavenly Market IV", located at 1760 3rd Ave, New York, New York 10029.

13.    **Plaintiff Fernando Rodriguez Sanchez ("Rodriguez")**, was at all relevant times, an adult individual residing in Bronx County, New York.

14.    Throughout the relevant time period, Rodriguez performed work for Defendants at Heavenly Market IV Inc. d/b/a "Heavenly Market IV" located at 1760 3rd Avenue New York, New York 10029; Heavenly Delicatessen Market, Ltd. d/b/a "Heavenly Market & Deli" located at 77

3rd Ave, New York, New York 10003, now permanently closed; and 8TH St Market Corp. d/b/a "Heavenly Market & Café" located at 44 East 8TH Street, New York, New York 10003. During a portion of his employment, Rodriguez worked simultaneously at the 77 3rd Avenue location and the 44 East 8TH Street location.

15.    **Plaintiff Enrique Romero Agustin ("Romero")**, was at all relevant times, an adult individual residing in Bronx County, New York.

16.    Throughout the relevant time period, Romero performed work for Defendants at Heavenly Market IV Inc. d/b/a "Heavenly Market IV" located at 1760 3rd Ave, New York, New York 10029; at Heavenly Delicatessen Market, Ltd. d/b/a "Heavenly Market & Deli" located at 77 3rd Ave, New York, New York 10003, now permanently closed; and 8TH Street Market Corp. d/b/a "Heavenly Market & Café" located at 44 East 8th Street, New York, New York 10003.

17.    **Plaintiff Jacinto Torres Perez ("Torres")**, was at all relevant times, an adult individual residing in New York County, New York.

18.    Throughout the relevant time period, Torres performed work for Defendants at 8TH Street Market Corp. d/b/a "Heavenly Market & Café" located at 44 East 8th Street, New York, New York 10003; at the Heavenly Finest Deli, Inc. I (an inactive corporation) d/b/a "Heavenly Market Deli" located at 296 3rd Avenue, New York, New York 10010; at 22 2ND Avenue Food Market Corp. d/b/a "Heavenly Market Café" located at 384 2nd Avenue, New York, New York 10010; and at Heavenly Market Inc. I d/b/a "Heavenly Market & Deli" located at 58 Carmine Street, New York, New York 10014.

19.    **Plaintiff Bernardo Revilla Gutierrez ("Revilla")**, was at all relevant times, an adult individual residing in New York County, New York.

20.    Throughout the relevant time period, Revilla performed work for Defendants at

8TH Street Market Corp. d/b/a "Heavenly Market & Café" located at 44 East 8th Street, New York, New York 10003; and Heavenly Market Sullivan Inc. d/b/a "Heavenly Finest Deli" located at 240 Sullivan Street, New York, New York 10012.

21.    **Plaintiff Fnina Bourhim ("Bourhim")**, was at all relevant times, an adult individual residing in Queens County, New York.

22.    Throughout the relevant time period, Bourhim performed work for Defendants at Heavenly Food Market 11TH Avenue, Inc. and Heavenly Market Street Inc. d/b/a "Heavenly Food Market" located at 311 11th Street, New York, New York 10001.

23.    Plaintiffs consent in writing to be party to this action, pursuant to 29 U.S.C. § 216(b), and their consent forms are attached hereto.

**Defendants:**

24.    **89TH Market Inc. d/b/a Heavenly Market (the "1692 York Avenue Location")** is an active New York Corporation with its principal place of business at 1692 York Avenue New York, New York 10128, and DOS address at 500 East 89TH Street, New York, New York 10128.

25.    According to the New York State Department of State, Division of Corporations, 89TH Market Inc. was incorporated by individual defendant Ali A. Musleh on April 12, 2021.

26.    **8TH St. Market Corp d/b/a Heavenly Market & Café (the "44 East 8th Street Location")** is an active New York Corporation with its principal place of business at 44 East 8TH Street New York, New York 10003.

27.    According to the New York State Department of State, Division of Corporations, 8TH St. Market Corp. was incorporated by individual defendant Abdullah Saleh Musleh Alkabadi on August 24, 2021.

28.    **Heavenly Market Inc. I d/b/a "Heavenly Market & Deli" (the "58 Carmine**

**Street Location")** is an active New York Corporation with its principal place of business and DOS address at 58 Carmine Street, New York, New York 10014.

29.    According to the New York State Department of State, Division of Corporations, Heavenly Market Inc. I was incorporated by individual defendant Gamal A. Musleh on July 14, 2023.

30.    **22 2ND Ave Food Market Corp. d/b/a "Heavenly Food Market" (the "384 2nd Avenue Location")**, is an active New York Corporation with its principal place of business and DOS address at 384 2nd Avenue, New York, New York 10010.

31.    According to the New York State Department of State, Division of Corporations, 22 2ND Ave Food Market Corp. was incorporated by individual defendant Ali A. Musleh on May 1, 2023.22 2ND Ave Food Market Corp. is a successor in interest to other inactive corporate entities through which Defendants previously owned and operated the same business, with the same management, at the same location, including, but not limited to, Second Avenue Food Market Corp. (an inactive New York corporation), Heavenly Food Market Corp. (an inactive New York corporation), and Heavenly Market Café, Inc. (an inactive New York corporation).

32.    **Heavenly Food Market 11TH Avenue, Inc. d/b/a "Heavenly Food Market" (the "311 11th Avenue Location")**, is an active New York Corporation with its principal place of business and DOS address at 311 11th Avenue, New York, New York 10001.

33.    According to the New York State Department of State, Division of Corporations, Heavenly Food Market 11TH Avenue, Inc. was incorporated on December 13, 2022.

34.    **Heavenly Market Sullivan Inc. d/b/a "Heavenly Finest Deli" (the "240 Sullivan Street Location")**, is an active New York Corporation with its principal place of business and DOS address at 240 Sullivan Street, New York, New York 10012.

35.     According to the New York State Department of State, Division of Corporations, Heavenly Market Sullivan, Inc. was incorporated by Individual Defendant Ahmed Saleh on February 9, 2024.

36.     89TH Market Inc., 8TH St. Market Corp., Heavenly Market Inc. I, 22 2ND Ave. Food Market Corp., Heavenly Food Market 11TH Avenue, Inc., and Heavenly Market Sullivan Inc., are hereinafter referred to collectively as the "Corporate Defendants."

37.     The Corporate Defendants are employers of Plaintiffs and the Collective and Class Members.

38.     The operations of the Corporate Defendants are interrelated and unified and are a single enterprise and/or joint employer of Plaintiffs and all Collective and Class Members.

39.     At all relevant times, the Corporate Defendants operated together as a single integrated business enterprise utilizing the same practices and policies.

40.     **Abdullah Saleh Musleh Alkabadi ("A. Saleh")** was, at all relevant times an adult individual.

41.

Upon information and belief, Defendant A. Saleh is the owner and lead operator of the Heavenly Market and Deli Enterprise, which he manages and runs directly or through his relatives, including without being limited to, Mohammed A. Musleh, Gamal A. Musleh, Ali A. Musleh, Omar A. Alkabadi, Maged A. Alkabadi, Waleed Abdullah Saleh, and Ahmed A. Saleh, among others, who oversee and run the day-to-day operations of the various Heavenly Market and Deli locations throughout New York City (the "Heavenly Market/Deli Enterprise"). Upon information and belief, and based on public records, A. Saleh is the patriarch of the family and father of Individual Defendants Gamal A. Musleh, Ali A. Musleh, Mohammed A. Musleh, Ahmed A. Saleh, and non-

defendant Fuad Musleh. As per public records, A. Musleh is the grandfather of Waleed A. Musleh, and a second grade relative (allegedly an uncle) of Defendants Omar A. Alkabadi and Maged A. Alkabadi.

42.    Upon information and belief, at all times relevant to this Complaint, Defendant A. Saleh controls and is intimately involved in the day-to-day operations of the Heavenly Market/Deli Enterprise and all of the corporate entities through which he operates the enterprise, including the Corporate Defendants herein. In that capacity, A. Saleh has both determined and instituted the unlawful wage and hour practices alleged herein.

43.    **Mohammed A. Musleh ("M. Musleh)** was, at all relevant times an adult individual.

44.    Upon information and belief, Defendant M. Musleh, son of Individual Defendant A. Saleh, managed and oversaw the day-to-day operations of the 44 East 8th Street Location and the 311 11th Avenue Location, among other Heavenly Market and Deli locations.

45.    **Gamal A. Musleh ("G. Musleh")** was, at all relevant times an adult individual.

46.    Upon information and belief, Defendant G. Musleh, son of Individual Defendant A. Saleh, managed and oversaw the day-to-day operations of the 44 East 8th Street Location, among other Heavenly Market and Deli locations.

47.    According to the New York State Department of State, Division of Corporations records, Defendant G. Musleh appears as the registered agent and CEO of Heavenly Delicatessen Market Group Inc., an inactive New York corporation with DOS address at 77 3rd Avenue, New York, New York 10003, and Heavenly Delicatessen Market, Ltd., also an inactive New York corporation with DOS address at 77 3rd Avenue, New York, New York 10003, which were part of the Heavenly Market/Deli Enterprise and employed Plaintiffs and other class and collective

members throughout the relevant time period.

48.    **Ali A. Musleh ("AA. Musleh")** was, at all relevant times and adult individual.

49.    Upon information and belief, Defendant AA. Musleh, son of Individual Defendant A. Saleh, managed and oversaw the day-to-day operations of 77 3rd Avenue Location, the 1760 3rd Avenue Location, and the 311 11th Avenue Location, among other Heavenly Market and Deli locations.

50.    **Omar A. Alkabadi ("O. Alkabadi")** was, at all relevant times an adult individual.

51.    Upon information and belief, Defendant O. Alkabadi, second grade relative of Individual Defendant A. Saleh and brother of Individual Defendant Maged A. Alkabadi, managed and oversaw the day-to-day operations of the 77 3rd Avenue Location, the 1760 3rd Avenue Location, and the 240 Sullivan Street Location, among other Heavenly Market and Deli locations.

52.    According to the New York State Department of State, Division of Corporations records, Defendant O. Alkabadi appears as the registered agent and CEO of Heavenly 53RD St. Inc., an active New York corporation with its main place of business at 400 East 53rd Street, New York, New York 10002, and Heavenly Market 10TH Avenue Corp., an active New York corporation with its main place of business at 440 10th Avenue, New York, New York 10001, which are part of the Heavenly Market/Deli Enterprise and employed Plaintiffs and other class and collective members throughout the relevant time period.

53.    **Maged A. Alkabadi ("M. Alkabadi")** was, at all relevant times, an adult individual.

54.    Upon information and belief, Defendant M. Alkabadi, second grade relative of Individual Defendant A. Saleh and brother of Individual Defendant Omar A. Alkabadi, managed and oversaw the day-to-day operations of the 296 3rd Avenue Location and the 384 2nd Avenue

Location, among other Heavenly Market and Deli locations.

55.    According to the New York State Department of State, Division of Corporations records, Defendant M. Alkabadi appears as the registered agent and CEO of the now inactive Heavenly Finest Deli, Inc. I, with its principal place of business and DOS address at 296 3rd Avenue, New York, New York 10010, which was part of the Heavenly Market/Deli Enterprise and employed Plaintiffs and other class and collective members during the relevant time period.

56.    **Waleed Abdullah Saleh ("W. Saleh")** was, at all relevant times, an adult individual.

57.    Upon information and belief, Defendant W. Saleh, grandson of Individual Defendant A. Saleh, managed and oversaw the day-to-day operations of the 296 3rd Avenue Location and the 384 2nd Avenue Location, among other Heavenly Market and Deli locations.

58.    According to the New York State Department of State, Division of Corporations records, Defendant W. Saleh appears as the registered agent and CEO of Heavenly Market Chamber Street Corp., an active New York corporation with its main place of business at 75 Chambers Street, New York, New York 10007, which is part of the Heavenly Market/Deli Enterprise and employed Plaintiffs and other class and collective members throughout the relevant time period.

59.    **Ahmed A. Saleh ("AA. Saleh")** was, at all relevant times, an adult individual.

60.    Upon information and belief, Defendant AA. Saleh, son of Individual Defendant A. Saleh, managed and oversaw the day-to-day operations of the 58 Carmine Street Location, among other Heavenly Market and Deli locations.

61.    According to the New York State Department of State, Division of Corporations records, Defendant AA. Saleh appears as the registered agent and CEO of Heavenly Market

Sullivan Inc., an active New York corporation with its principal place of business at 240 Sullivan Street, New York, New York 10012, which is part of the Heavenly Market/Deli Enterprise and employed Plaintiffs and other class and collective members throughout the relevant time period.

62.     Defendants A. Saleh, M. Musleh, G. Musleh, AA. Musleh, O. Alkabadi, M. Alkabadi, W. Saleh, and AA. Saleh, are hereinafter referred to collectively as the "Individual Defendants."

63.     Upon information and belief, throughout the relevant time period, the Individual Defendants maintained operational control over the Corporate Defendants and the other corporations that are part of the Heavenly Market/Deli Enterprise, by determining the wages and compensation of employees, establishing the schedule of employees, maintaining employee records, and through possessing the authority to hire and fire employees, including Plaintiffs, and members of the Collective and Class.

64.     Upon information and belief, throughout the relevant time period, the Individual Defendants participated in the day-to-day operations of the Corporate Defendants and the other corporations that are part of the Heavenly Market/Deli Enterprise and acted intentionally in their direction and control of Plaintiffs and the Defendants' other similarly situated employees, and are "employers" pursuant to the FLSA, 29 U.S.C. § 203(d), 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and are jointly and severally liable with the Corporate Defendants.

65.     **DOES NO. 1 through NO. 20 ("DOE Defendants")** (collectively with the Corporate Defendants and the Individual Defendants, the "Defendants") are persons and/or entities whose true names and capacities are presently unknown to Plaintiffs, who therefore sue them by such fictitious names. Plaintiffs are informed and believe and thereon allege that, at all times

relevant to this action, that each of the fictitiously-named Defendants perpetrated some or all of the wrongful acts alleged herein, are responsible in some manner for the matters alleged herein, and are jointly and severally liable to Plaintiffs. Plaintiffs will amend this Complaint to allege the true names and capacities of the DOE Defendants when ascertained. Plaintiffs are informed and believe and thereon allege that, at all times relevant to this Complaint, the DOE Defendants are joint employers, working as a joint enterprise with, and are the alter egos of the Corporate Defendants and/or Individual Defendants, which own, operate, and manage the Heavenly Market/Deli Enterprise.

66.     At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

67.     At all relevant times, Defendants employed, and/or continue to employ, Plaintiffs and each of the Collective Action members within the meaning of the FLSA.

68.     At all relevant times, Plaintiffs and the Class Action Members were employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

69.     Upon information and belief, at all relevant times, the Corporate Defendants and all the other corporations that are part of the Heavenly Market/Deli Enterprise have each had gross revenues in excess of $500,000.00.

## FLSA COLLECTIVE ACTION ALLEGATIONS

70.     Pursuant to 29 U.S.C. §§ 206, 207 & 216(b), Plaintiffs bring their First Cause of Action as a collective action under the FLSA on behalf of themselves and the following collective:

> All non-management employees who worked for Defendants as general grocery and deli employees at any time since May 5, 2022, and through the entry of judgment in this case (the "Collective Action Period") at any Heavenly Market and Deli locations in New York (the "Collective Action

Members").

71.    A collective action is appropriate in this circumstance because Plaintiffs and the

Collective Action Members are similarly situated, in that they were all subjected to Defendants'

illegal policies of failing to pay overtime premiums for all work in excess of forty (40) hours each

week. As a result of these policies, Plaintiffs and the Collective Action Members did not receive

legally-required overtime premium payments for all hours worked in excess of forty (40) hours

per week.

72.    Plaintiffs and the Collective Action Members have substantially similar job duties

and were and are paid pursuant to a similar, if not the same, payment structure.

## FED. R. CIV. P. 23 CLASS ACTION ALLEGATIONS

73.    Pursuant to the NYLL, Plaintiffs bring their Second through Sixth Causes of Action

under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following

class:

> All non-management employees who worked for Defendants as
> general grocery and deli employees at any time since September 19,
> 2018 and through the entry of judgment in this case (the "Class
> Period") at any of the Heavenly Market and Deli locations in New
> York (the "Class Members").

74.    The Class Members are readily ascertainable. The number and identity of the Class

Members are determinable from the records of Defendants. For purposes of notice and other

purposes related to this action, their names and addresses are readily available from Defendants.

Notice can be provided by means permissible under Fed. R. Civ. P. 23.

75.    The Class Members are so numerous that joinder of all members is impracticable.

76.    Upon information and belief, there are in excess of forty (40) Class Members.

77.    The questions of law and fact common to the Class predominate over any questions

solely affecting the individual members of the Class. These common questions include, but are not

limited to:

   a.  whether Defendants employed Plaintiffs and the Class Members within the meaning of the NYLL;

   b.  whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiffs and the Class Members;

   c.  whether Defendants failed and/or refused to pay Plaintiffs and the Class Members minimum wage for all hours worked;

   d.  whether Defendants failed and/or refused to pay Plaintiffs and the Class Members overtime premiums for hours worked in excess of forty (40) hours per workweek;

   e.  whether Defendants failed and/or refused to pay Plaintiffs and the Class Members spread of hours premiums for days when they worked in excess of ten hours and/or worked a split shift;

   f.  whether Defendants failed to provide Plaintiffs and the Class Members with a proper statement of wages with every wage payment as required by the NYLL;

   g.  whether Defendants failed to provide proper wage notices to Plaintiffs and Class Members at the beginning of their employment as required by the NYLL;

   h.  whether Defendants' failure to properly pay Plaintiffs and the Class Members lacked a good faith basis; and

   i.  whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

78.    <u>Plaintiffs' claims are typical of the Class Members' claims</u>. Plaintiffs, like all Class Members, were non-management employees of Defendants who worked for Defendants as general grocery and deli employees pursuant to their corporate policies. Plaintiffs, like all Class Members, were, *inter alia*, paid less than the statutory minimum wage for all hours worked, were not paid overtime premium pay for hours worked over forty (40) hours in a given workweek, did not receive spread of hours pay for days when they worked in excess of ten (10) hours, and did not receive proper wage statements and wage notices. If Defendants are liable to Plaintiffs for the claims enumerated in this Complaint, they are also liable to all Class Members.

79.    <u>Plaintiffs and their Counsel will fairly and adequately represent the Class</u>. There are no conflicts between Plaintiffs and the Class Members, and Plaintiffs bring this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover their own damages.

80.    Plaintiffs' counsel are experienced class action litigators who are well-prepared to represent the interests of the Class Members.

81.    <u>A class action is superior to other available methods for the fair and efficient adjudication of this litigation</u>.

82.    Defendants are sophisticated parties with substantial resources. The individual Plaintiffs lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  The individual members of the class have no interest or capacity to bring separate actions; it is desirable to concentrate the litigation in one case; Plaintiffs are unaware of any other currently pending litigation concerning this controversy; and there are no likely difficulties that will arise in managing the class action.

## <u>STATEMENT OF FACTS</u>

**Defendants' Delicatessen and Market Enterprise**

83.    Upon information and belief, throughout the relevant time period, the Individual Defendants, in conjunction with other relatives and corporations included here as DOE Defendants, have owned and operated a portfolio of deli and market businesses in New York state which include, in addition to the active Corporate Defendants, a number of other entities which operate the Heavenly Market and Deli locations that are part of the enterprise and share the same corporate practices as the Corporate Defendants. In particular, Defendants currently own and operate the following twenty-two (22) active corporate entities:

- **212 8TH Ave. Heavenly Corp.** According to the New York State Department of State, Division of Corporations, the entity was incorporated on January 14, 2025 by Fuad Musleh.  Fuad Musleh also appears as the registered agent of the corporation. The corporation has its DOS address at 212 8th Avenue, New York, New York 10001;

- **685 1ST Ave. Heavenly Corp.** According to the New York State Department of State, Division of Corporations, the entity was incorporated on January 14, 2025 by Fuad Musleh.  Fuad Musleh appears as the registered agent of the corporation. The corporation has its DOS address at 685 1st Avenue, New York, New York 10016;

- **Heavenly 3RD Ave Inc.** According to the New York State Department of State, Division of Corporations, the entity was incorporated on August 16, 2023 by Individual Defendant Abdullah Saleh. The corporation has its DOS address at 1660 3rd Avenue, New York, New York 10128;

17

- **Heavenly 7TH Ave. Corp.** According to the New York State Department of State, Division of Corporations, the entity was incorporated on February 7, 2024. Fuad Musleh appears as the registered agent of the corporation. The corporation has DOS address at 194 7th Avenue, New York, New York 10011;

- **Heavenly 53RD St. Inc.** According to the New York State Department of State, Division of Corporations, the entity was incorporated on September 28, 2023 and originally listed Fuad Musleh as the registered agent for service of process, which Defendants subsequently changed to individual Defendant Omar Alkabadi on September 28, 2023. Omar Alkabadi is listed as the President of the corporation. The corporation has its DOS address at 400 East 53rd Street, New York, New York 10022;

- **Heavenly Café Prince St. Inc.** According to the New York State Department of State, Division of Corporations, the entity was incorporated on January 7, 2025 by Individual Defendant Omar Alkabadi. The corporation has its DOS address at 172 Prince Street, New York, New York 10012;

- **Heavenly Finest Deli Inc.** According to the New York State Department of State, Division of Corporations, the entity was incorporated on November 11, 2024. Fuad Musleh appears as the registered agent of the corporation. The corporation has its DOS address at 81 Rivington Street, New York, New York 10002;

- **Heavenly Finest Deli Inc. I**. According to the New York State Department of State, Division of Corporations, the entity was incorporated on September 6, 2024. The corporation has its DOS address at 1824 2nd Avenue, New York, New York 10128;

- **Heavenly Finest Deli Inc. II**. According to the New York State Department of State, Division of Corporations, the entity was incorporated on December 18, 2021 by Individual Defendant Omar Alkabadi, who appears as the agent and CEO for the corporation. The corporation has its DOS address at 1175 2nd Avenue, New York, New York 10065;

- **Heavenly Food Market First Ave. Inc.** According to the New York State Department of State, Division of Corporations, the entity was incorporated on January 3, 2025. Adeeb Al Zandani appears as the agent for the corporation. The corporation has its DOS address at 400 East 53rd Street, New York, New York 10022;

- **Heavenly Food Market Inc.** According to the New York State Department of State, Division of Corporations, the entity was incorporated on November 4, 2024. The corporation has its DOS address at 201 East 115th Street, New York, New York 10129;

- **Heavenly Food Market Ninth Street Corp.** According to the New York State Department of State, Division of Corporations, the entity was incorporated on November 20, 2023. Fuad Musleh appears as the registered agent for the corporation. The corporation has its DOS address at 146-148 2nd Avenue, New York, New York 10003;

- **Heavenly Fresh & Healthy Food Market Corp.** According to the New York State Department of State, Division of Corporations, the entity was incorporated on August 9, 2023. The corporation has its DOS address at 146 2nd Avenue, New York, New York 10003;

- **Heavenly Market 10TH Avenue Corp.** According to the New York State Department of State, Division of Corporations, the entity was incorporated on June 8, 2023. Individual Defendant Omar Alkabadi appears as the registered agent for the corporation. The corporation has its DOS address at 440 10th Avenue, New York, New York 10001;

- **Heavenly Market 30 St. Inc.** According to the New York State Department of State, Division of Corporations, the entity was incorporated on April 11, 2024 by Individual Defendant Ali A. Musleh. The corporation has its DOS address at 312 11th Avenue, New York, New York 10001;

- **Heavenly Market Chamber Street Corp.** According to the New York State Department of State, Division of Corporations, the entity was incorporated on February 27, 2024. Individual Defendant Waleed A. Saleh appears as the registered agent for this corporation. The corporation has its DOS address at 75 Chambers Street, New York, New York 10007;

- **Heavenly Market Deli & Juice Bar Inc.** According to the New York State Department of State, Division of Corporations, the entity was incorporated on August 21, 2020. The corporation has its DOS address at 1671 York Avenue, New York, New York 10128;

- **Heavenly Market Plus Corp.** According to the New York State Department of State, Division of Corporations, the entity was incorporated on February 16, 2024. The corporation has its DOS address at 203 West 125th Street, New York, New York 10127;

- **Heavenly Market Spring Inc.** According to the New York State Department of

State, Division of Corporations, the entity was incorporated on September 26, 2024 by Individual Defendant Gamal A. Musleh.  The corporation has its DOS address at 193 Spring Street, New York, New York 10012;

- **Heavenly Green Deli Inc.** According to the New York State Department of State, Division of Corporations, the entity was incorporated on January 20, 2022 by Individual Defendant Ali A. Musleh. The corporation has its DOS address at 80 Dekalb Avenue, Brooklyn, New York 11201;

- **Heavenly Prince Deli Inc.** According to the New York State Department of State, Division of Corporations, the entity was incorporated on February 14, 2023 by Individual Defendant Maged A. Alkabadi. The corporation has its DOS address at 172 Prince Street, New York, New York 10012; and

- **1741 Gourmet Deli Inc.** According to the New York State Department of State, Division of Corporations, the entity was incorporated on January 31, 2020. The corporation has its main place of business and DOS address at 1741 1st Avenue, New York, New York 10128.

84.    Throughout the relevant time period, Defendants have created and subsequently dissolved multiple different corporations to manage and operate other Heavenly Market and Deli locations, including Heavenly Market IV Inc. d/b/a "Heavenly Market IV" ("Heavenly Market IV"), which was voluntary dissolved by Individual Defendant A. Saleh on December 2, 2024.  This corporation was one of the corporate entities used by Defendants to manage and control the deli located at 1760 3rd Avenue, New York, New York 10029, where several of the Plaintiffs worked for Defendants. Although the corporation was dissolved, this location is still open to the public and continues to be owned and operated by Defendants as a part of the Heavenly Market/Deli

Enterprise.

85.    Defendants also incorporated Heavenly Delicatessen Market, Ltd. on January 18, 2018, later dissolved on August 5, 2022, which was another entity that managed the deli located at 77 3rd Avenue, New York, New York 10003, where Plaintiffs also worked for Defendants.  The registered agent for the corporation was Individual Defendant Gamal Musleh.  Although the corporation was dissolved in 2022, Defendants continued operating this location as a part of the Heavenly Market/Deli Enterprise until in or about August 2024 when the location closed.

86.    Defendants also incorporated Heavenly Finest Deli, Inc. I on April 25, 2022, later dissolved on June 27, 2023.  This corporation managed the deli located at 296 3rd Avenue, New York, New York 10010, where Plaintiffs also worked for Defendants. The registered agent for the corporation was Individual Defendant Maged Alkabadi.  Although the corporation was dissolved, this location is still open to the public and continues to be owned and operated by Defendants as a part of the Heavenly Market/Deli Enterprise.

87.    Several other corporations forming part of the Heavenly Market/Deli Enterprise have also been created and later dissolved by Defendants and/or their relatives during the relevant time period, including Heavenly Market Cafe, Inc. (incorporated on February 25, 2022 and subsequently dissolved on February 5, 2025), Heavenly Finest Deli Inc. (incorporated on December 3, 2020 and subsequently dissolved on September 19, 2024), Heavenly Food Market Corp. (incorporated on August 1, 2022 and subsequently dissolved on January 26, 2024), Heavenly Delicatessen Market Group, Inc. (incorporated on January 18, 2018 and subsequently dissolved on September 8, 2022), and Second Avenue Food Market Corp. (incorporated on November 12, 2020 and subsequently dissolved on November 7, 2022).  Notably, Defendants continue to operate Heavenly Market and Deli locations at each of the addresses affiliated with these now-dissolved

corporations.

88.     Defendants' have even in some instances reconstituted the exact corporate entities that they have previously dissolved. For instance, Heavenly Finest Deli Inc. was originally incorporated by M. Musleh on December 3, 2020 with a DOS address at 240 Sullivan Street, New York, New York 10012. The corporation was then dissolved by M. Musleh on September 19, 2024. Subsequently, the corporation was re-incorporated on November 11, 2024 with a different DOS address at 81 Rivington Street, New York, NY 10002.

89.     As another example of this practice, Heavenly Finest Deli Inc. I was originally incorporated by M. Alkabadi on April 25, 2022 with a DOS address at 296 Third Avenue, New York, New York 10010. The corporation was then dissolved by M. Alkabadi on June 27, 2023. Subsequently, the corporation was re-incorporated on September 6, 2024 with a different DOS address at 1824 2nd Avenue, New York, NY 10128.

90.     Upon information and belief, all Heavenly Market and Deli locations employ their staff interchangeably and Plaintiffs and other Collective and Class Members were paid in the same manner regardless of which location they worked at. Plaintiffs and other Collective and Class Members were frequently requested to cover for absent employees at other of the Heavenly Market and Deli locations, without significant changes in hours worked and/or wages paid.

91.     Upon information and belief, all Heavenly Market and Deli locations exchange products and inventory frequently, and in general, operate as a single integrated enterprise.

92.     All Heavenly Market and Deli locations share a common name and present themselves in the same manner to the public, using the same advertising strategy, sharing the same brand identity and the same trade name to the public, identical logos and iconography, storefront/facades and awnings in each of their locations, and in general, a unified brand marketing.

As such, all Heavenly Market and Deli locations that are part of the single integrated enterprise, maintain common policies and practices with respect to the employees' work, and Plaintiffs and all Collective and Class Members were considered employees of all Defendants who freely exchange the work power between locations.

93.    Plaintiffs are aware that the Individual Defendants are each an owner, officer, and operator of 89TH Market Inc., 8TH Street Market Corp, Heavenly Market Inc. I, 22 2ND Ave. Food Market Corp., Heavenly Food Market 11TH Avenue, Inc.,  Heavenly Market Sullivan Inc., and the currently inactive entities Heavenly Market IV Inc., Heavenly Delicatessen Market, LTD, and Heavenly Finest Deli, Inc. I.

94.    Upon information and belief, throughout the relevant time period, the Individual Defendants and DOE Defendants have had power over payroll and personnel decisions of 89TH Market Inc., 8TH Street Market Corp, Heavenly Market Inc. I, 22 2ND Ave. Food Market Corp., Heavenly Food Market 11TH Avenue, Inc., Heavenly Market Sullivan Inc., and the currently defunct Heavenly Market IV Inc., Heavenly Delicatessen Market, LTD, and Heavenly Finest Deli, Inc. I, including the power to hire and fire employees, set their wages, retain time and/or wage records, and otherwise control the terms and conditions of their employment.

95.    Upon information and belief, Defendant A. Saleh is a constant presence at various Heavenly Market and Deli locations, where he discusses with managers and/or supervisors, many of whom are his relatives, the state of the business, employee issues, and other information related to the general operation of the Heavenly Market and Deli locations.  Sometimes he also helps around the stores and works at the cash register.

96.    Plaintiffs have observed that Defendant O. Alkabadi is typically present at the 1692 York Avenue location, the 44 East 8TH Street location, and the 240 Sullivan Street Location, two

(2) to three (3) times per week and sometimes more frequently. When Defendant O. Alkabadi is present at the 1692 York Avenue location, the 44 East 8TH Street location, and the 240 Sullivan Street Location, he supervises employees, pays employees, prepares orders for inventory, resolves issues with vendors, and performs other work as needed, including working at the cash register.

97.    Plaintiffs have observed that Defendant M. Musleh is typically present at the 1692 York Avenue location, the 44 East 8TH Street location, and the 311 11th Avenue Location, two (2) to three (3) times per week and sometimes more frequently. When Defendant M. Musleh is present at the 1692 York Avenue location, the 44 East 8TH Street location, and the 311 11th Avenue Location, he supervises employees, pays employees, prepares orders for inventory, resolves issues with vendors, and performs other work as needed, including working at the cash register.

98.    Plaintiffs have observed that Defendant AA. Musleh is typically present at the 1760 3rd Avenue location, the 77 3rd Avenue location (while it was still in operation), the 44 East 8TH Street location, and the 311 11th Avenue Location, two (2) to three (3) times per week and sometimes more frequently. When Defendant AA. Musleh is present at any of the Heavenly Market and Deli locations, he supervises employees, pays employees, prepares orders for inventory, resolves issues with vendors, and performs other work as needed, including working at the cash register.

99.    Plaintiffs have observed that Defendant G. Musleh is typically present at 77 3rd Avenue location (while it was still in operation) and the 44 East 8TH Street location two (2) to three (3) times per week and sometimes more frequently. When Defendant G. Musleh is present at any of the Heavenly Market and Deli locations, he supervises employees, pays employees, prepares orders for inventory, resolves issues with vendors, and performs other work as needed, including working at the cash register.

100.    Plaintiffs have observed that Defendant M. Alkabadi is typically present at the 296 3rd Avenue location and at the 384 2nd Avenue location, on a daily basis. When Defendant M. Alkabadi is present at any of the Heavenly Market and Deli locations, he supervises employees, pays employees, prepares orders for inventory, resolves issues with vendors, and performs other work as needed, including working at the cash register.

101.    Plaintiffs have observed that Defendant W. Saleh is typically present at the 296 3rd Avenue location and at the 384 2nd Avenue location, on a daily basis. When Defendant W. Saleh is present at any of the Heavenly Market and Deli locations, he supervises employees, pays employees, prepares orders for inventory, resolves issues with vendors, and performs other work as needed, including working at the cash register.

102.    Plaintiffs have observed that Defendant AA. Saleh is typically present at the 58 Carmine Street Location, on a daily basis. When Defendant AA. Saleh is present at any of the Heavenly Market and Deli locations, he supervises employees, pays employees, prepares orders for inventory, resolves issues with vendors, and performs other work as needed, including working at the cash register.

**Plaintiffs' Work for Defendants**

103.    **Plaintiff Cuazitl** was employed by Defendants as a general grocery and deli employee during two (2) distinct periods: the first period was from in or around February 2020 through in or around May 2020; and the second period was from in or around March 2022 until in or around May 2023 (the "Cuazitl Employment Period").

104.    From in or around February 2020 until in or around March 2020, Plaintiff Cuazitl worked for Defendants at the Heavenly Market & Café located at 44 East 8th Street. From in or around April 2020 until in or around May 2020, Plaintiff Cuazitl worked for Defendants at

Heavenly Market located at 1692 York Avenue. From in or around March 2022 until in or around the end of April 2023, Plaintiff Cuazitl worked for Defendants at Heavenly Market IV located at 1760 3rd Avenue.

105.    As a general grocery and deli employee, Plaintiff Cuazitl's duties included, without being limited to, the preparation of the food and other products sold at the deli, hot and cold meals, especially sandwiches, and ensure food quality and safety. In general, Plaintiff Cuazitl was responsible for selling the products and food to the customers and helping them with the questions and other information they needed about the delicatessen food.   Plaintiff Cuazitl was also responsible for maintaining, cleaning, and sanitizing his work area.

106.    During the time period Plaintiff Cuazitl worked at the 44 East 8th Street location, he was required to work six (6) days per week, the overnight shift, from approximately 5:00 pm to approximately 2:00 am, nine (9) hour shifts, for a total of approximately fifty-four (54) hours per week.

107.    During the time period Plaintiff Cuazitl worked at the 1692 York Avenue location, he was required to work six (6) days per week from approximately 8:00 am to approximately 6:00 pm, ten (10) hour shifts, for a total of approximately sixty (60) hours per week.

108.    When Plaintiff Cuazitl returned to work for Defendants and was assigned to the 1760 3rd Avenue location, he was required to work six (6) days per week. For the first three (3) weeks at the location Plaintiff Cuazitl was assigned to the overnight shift, from approximately 5:00 pm to approximately 2:00 am, nine (9) hours shifts, for a total of approximately fifty-four (54) hours per week. After this short period of time, Plaintiff Cuazitl's schedule changed, working from approximately 9:00 am to approximately 8:00 pm, eleven (11) hour shifts, for a total of approximately sixty-six (66) hours per week, and sometimes longer. During a long portion of his

employment at this location, the store was short-staffed and due to that reason, at least five (5) days per week, the relieving employee would show up late or not at all, causing Plaintiff Cuazitl to work from approximately 9:00 am to approximately 2:00 am, double shifts of approximately fourteen (14) to fifteen (15) hours per day, adding numerous hours to his already busy schedule.

109.    Plaintiff Cuazitl was not able to take a thirty (30) minute uninterrupted break during the course of his long shifts. When Plaintiff had the opportunity to eat, he usually consumed food while performing his work at the deli.

110.    Throughout the Cuazitl Employment Period, Defendants provided Plaintiff Cuazitl and other employees no reliable means for tracking their hours worked. Plaintiff Cuazitl and other employees were paid in accordance with the schedules set by Defendants.

111.    During the time period Cuazitl was assigned to work at the 44 East 8th Street location, Plaintiff was paid thirteen dollars ($13.00) per hour for all hours worked, including those beyond forty (40) in a given workweek. As such, Plaintiff Cuazitl was paid below the legally-required minimum wage in New York City.

112.    During the time period Plaintiff Cuazitl worked at the 1692 York Avenue location, Plaintiff was initially paid fourteen dollars ($14.00) per hour, and after a short period of time payment was increased to fifteen ($15.00) dollars per hour for all hours worked, including those beyond forty (40) in a given workweek.  As such, during a portion of his employment at this location, Plaintiff Cuazitl was paid below the legally-required minimum wage in New York City.

113.    During the time period Plaintiff Cuazitl worked at the 1760 3rd Avenue location, Plaintiff was initially paid sixteen dollars ($16.00) per hour, and just before the end of his employment period at a rate of seventeen ($17.00) dollars per hour for all hours worked, including those beyond forty (40) in a given workweek.

114.    Throughout the Cuazitl Employment Period, Plaintiff Cuazitl received his wages entirely in cash, without pay stub or wage statement, or other similar document setting forth his gross wages, hourly rate(s), deductions made, or actual hours worked.

115.    At no time during the Cuazitl Employment Period did Defendants provide Plaintiff Cuazitl with a written wage notice setting forth his hourly rate(s), payday, contact information for Defendants, or any other information required by the NYLL § 198(1-b).

116.    Upon information and belief, during the Cuazitl Employment Period at the 44 East 8TH Street location, there were ten (10) to twelve (12) employees working at any given time. The COVID-19 pandemic caused Defendants to reduce the employment workforce to approximately eight (8) employees at any given time.

117.    During the Cuazitl Employment Period, Plaintiff Cuazitl was supervised daily by Individual Defendant O. Alkabadi who he knows as "Omar" and another individual that he knows as "Haradzi." O. Alkbadi and Haradzi were the ones responsible for paying employees, giving them orders, determining employee schedules, supervising employee work, and resolving issues with vendors. Overall, O. Alakabadi and Haradzi were responsible for managing the day-to-day business and running the Heavenly Market and Deli locations at which Cuazitl worked according to Defendants' rules and practices.

118.    **Plaintiff Islas** was employed by Defendants as a general grocery and deli employee from in or around April 2021 through in or around June 2022 (the "Islas Employment Period").

119.    Throughout the Islas Employment Period, Plaintiff Islas performed work for Defendants at their 1760 3rd Avenue location.

120.    As a general grocery and deli employee, Plaintiff Islas' duties included, without being limited to, the preparation of the food and other products sold at the deli, hot and cold meals,

especially sandwiches, and ensure food quality and safety. In general, Plaintiff Islas was responsible for selling the products and food to the customers and helping them with questions and other information they needed about the delicatessen food. Plaintiff was also responsible for maintaining, cleaning, and sanitizing his work area.

121.    From in or around April 2021 until in or around June 2021, Plaintiff Islas was required to work seven (7) days per week with no days off. During that period, Plaintiff Islas was required to work the overnight shift from approximately 7:00 pm to approximately 7:00 am, twelve (12) hours shifts, for a total of approximately eighty-four (84) hours per week.

122.    From in or around August 2021 until in or around December 2021, Plaintiff Islas was required to work six (6) days per week with either Wednesdays or Thursdays off. Plaintiff Islas worked the overnight shift from approximately 7:00 pm to approximately 5:00 am, ten (10) hour shifts, for a total of approximately sixty (60) hours per week. On a regular basis, at least once or twice a week, Plaintiff Islas was required by Defendants to stay at the deli until the relieving employee arrived at the store. On those occasions, Plaintiff Islas typically worked until 6:00 am or 7:00 am, adding additional hours to his already busy schedule.

123.    From in or around January 2022 until in or around June 2022, at the end of his employment period, Plaintiff Islas' schedule changed to the morning shift and he was required to work six (6) days per week, with either Wednesdays or Thursdays off, from approximately 7:00 am to approximately 5:00 pm, ten (10) hours shifts, for a total of approximately sixty (60) hours per week. Plaintiff Islas was occasionally required to work longer until the relieving employee arrived at the store, adding additional hours to his already busy schedule.

124.    During the Islas Employment Period, Plaintiff Islas was supervised on a daily basis by Individual Defendant O. Alkabadi, who he knows as "Omar" and another individual he knows

as "Haradzi." Typically, one supervisor would work during the day, and the other supervisor arrived at night to relieve the day-shift supervisor for the night shift.

125.    Individual Defendant O. Alkabadi and Haradzi typically paid employees, gave them orders, determined employee schedules, supervised employee work, resolved issues with vendors, and overall, managed the day-to-day business according to Defendants' policies.

126.    At no time during the Islas Employment Period was Plaintiff Islas able to take a thirty (30) minute uninterrupted break during his shift. When he was able to take a break, it typically lasts no more than ten (10) to fifteen (15) minutes, between tasks.

127.    Throughout the Islas Employment Period, Defendants provided Plaintiff Islas and other employees no reliable means for tracking their hours worked. Plaintiff Islas and other employees were paid in accordance with the schedules set by Defendants.

128.    From in or around April 2021 until in or around July 2021, Plaintiff Islas was paid twelve dollars and seventy-five cents ($12.75) per hour for all hours worked, including those beyond forty (40) in a given workweek.  As such, during this period, Plaintiff Islas was paid below the legally-required minimum wage in New York.

129.    From in or around August 2021 until in or around December 2021, Plaintiff Islas was paid thirteen dollars ($13.00) per hour for all hours worked, including those beyond forty (40) in a given workweek.  As such, during this period, Plaintiff Islas was paid below the legally-required minimum wage in New York.

130.    For the last portion of the Islas Employment Period, from in or around January 2022 until in or around June 2022, Plaintiff Islas was paid eighteen dollars ($18.00) per hour for all hours worked, including those beyond forty (40) in a given workweek.

131.    Throughout the Islas Employment Period, Plaintiff received his wages entirely in

cash, without pay stub or wage statement, or any other similar document setting forth his gross wages, hourly rate(s), deductions made, or actual hours worked.

132.    At no time during the Islas Employment Period did Defendants provide Plaintiff Islas with a written wage notice or setting forth his hourly rate(s), payday, contact information for Defendants, or any other information required by the NYLL § 198(1-b).

133.    During the Islas Employment Period, Plaintiff Islas was required by Defendants to purchase and wear two (2) uniform t-shirts for twenty-five dollars ($25.00) each.

134.    During the Islas Employment Period, there were typically seven (7) employees working at any given time at the 1760 3rd Avenue location.

135.    **Plaintiff Rodriguez** was employed by Defendants as a general grocery and deli employee from in or around July 2019 until in or around December 2022, with a break between March 2020 to March 2021 due to the COVID-19 pandemic (the "Rodriguez Employment Period").

136.    From in or around July 2019 until in or around March 2020, Plaintiff Rodriguez worked at Heavenly Market & Café located at 44 East 8th Street New York, New York 10003. From in or around March 2021 until in or around December 2021, Plaintiff Rodriguez worked at two (2) of Defendants' Heavenly Market and Deli locations at the same time.  During this period, Plaintiff Rodriguez was assigned to work certain days of the week at Heavenly Market & Deli located at 77 3rd Avenue and the remaining days of the week at Heavenly Market & Café located at 44 East 8th Street. For the last year of his employment, from in or around January 2022 until in or around December 2022, Plaintiff Rodriguez worked at Heavenly Market IV, located at 1760 3rd Avenue, New York, New York 10029.

137.    As a general grocery and deli employee, Plaintiff Rodriguez's duties included,

without being limited to, the preparation of the food and other products sold at the deli, including hot and cold meals, especially sandwiches, and ensuring food quality and safety. In general, Plaintiff Rodriguez was responsible for selling the products and food to the customers and helping them with questions and other information they needed about the delicatessen food. Plaintiff Rodriguez was also responsible for maintaining, cleaning, and sanitizing his work area.

138. During the Rodriguez Employment Period, when Plaintiff Rodriguez worked only at the 44 East 8th Street location, he was required to work six (6) days per week from approximately 10:00 am to approximately 8:00 pm, ten (10) hours shifts, for a total of approximately sixty (60) hours per week,

139. During the Rodriguez Employment Period, when Plaintiff Rodriguez began working at the 77 3rd Avenue location and the 44 East 8th Street location simultaneously, Plaintiff Rodriguez was required to work two (2) to three (3) days per week at the 44 East 8th Street location and the remaining days at the 77 3rd Avenue location. During this time period, at the 77 3rd Avenue location, Plaintiff Rodriguez was required to work the overnight shift, from approximately 8:00 pm to approximately 6:00 am, ten (10) hour shifts. At the 44 East 8th Street location, Plaintiff Rodriguez was required to do the same, for a total of approximately sixty (60) hours per week.

140. During the last year of the Rodriguez Employment Period, when Plaintiff Rodriguez was assigned to work at the 1760 3rd Avenue location, he was required to work six (6) days per week from approximately 7:00 am to approximately 5:00 pm, ten (10) hour shifts. Occasionally, Plaintiff Rodriguez was required to stay at the store for approximately one (1) to two (2) hours after his shift to cover for co-workers. As a result, Plaintiff Rodriguez frequently worked beyond sixty (60) hours per week.

141. During the Rodriguez Employment Period, when Plaintiff Rodriguez worked at the

44 East 8th Street location, he was occasionally allowed to take a twenty (20) minute break during his shift to eat and rest.

142.    During the Rodriguez Employment Period, when Plaintiff Rodriguez worked at the 77 3rd Avenue location and the 1760 3rd Avenue location, he was not able to take a thirty (30) minute uninterrupted break during the course of his shifts. On the occasions he was able to take a break between tasks, Plaintiff Rodriguez was only able to rest for approximately five (5) to ten (10) minutes per shift.

143.    Throughout the Rodriguez Employment Period, Defendants provided Plaintiff Rodriguez and other employees no reliable means for tracking their hours worked. Plaintiff Rodriguez and other employees were paid in accordance with the schedules set by Defendants.

144.    At the beginning of the Rodriguez Employment Period, Plaintiff Rodriguez was paid sixteen dollars ($16.00) per hour. Plaintiff Rodriguez believes that after a few months of employment, his payment was increased to seventeen dollars ($17.00) per hour.   Plaintiff Rodriguez was paid the same rate for all hours worked, including those beyond forty (40) in a given workweek.

145.    Throughout the Rodriguez Employment Period, Plaintiff Rodriguez received his wages entirely in cash, without a pay stub or wage statement, or other similar document setting forth his gross wages, deductions made, hourly rate(s) or actual hours worked.

146.    At no time during the Rodriguez Employment Period did Defendants provide Plaintiff Rodriguez with a written wage notice setting forth his hourly rate(s), payday, contact information for Defendants, or any other information required by the NYLL § 198(1-b).

147.    During the time period Plaintiff Rodriguez worked at the 44 East 8th Street location, Plaintiff Rodriguez was managed by Individual Defendant M. Musleh, who he knows as

"Mohammed." Plaintiff Rodriguez believes he is the son of Defendant A. Saleh. Defendant M. Musleh was at the store on a daily basis supervising employees, resolving issues, and in general, running the business according to Defendants' rules and policies. On occasion, Plaintiff Rodriguez saw Individual Defendant A. Saleh at other locations of Defendants where he worked, which he visited to verify that his relatives were running the businesses in accordance with his policies.

148.    During the time period Plaintiff Rodriguez worked at the two locations simultaneously, he was supervised by Individual Defendant O. Alkabadi, who he knows as "Omar." Defendant O. Alkabadi was at the 1760 3rd Avenue location on a daily basis supervising employees and running the business according to Defendants' policies.

149.    **Plaintiff Romero** was employed by Defendants as a general grocery and deli employee during three (3) distinct periods: the first period was from in or around January 2016 through in or around December 2017; a second period from in or around August 2019 until in or around January 2020; and a third and final period was from in or around February 2021 until in or around December 2022 (altogether, the "Romero Employment Period").

150.    From in or around January 2016 until in or around December 2017, Plaintiff Romero worked at the Heavenly Market & Deli located at 77 3rd Avenue. From in or around August 2019 until in or around January 2020, Plaintiff Romero worked at Heavenly Market IV, located at 1760 3rd Avenue.  From in or around February 2021 until in or around December 2021, Plaintiff Romero worked at Heavenly Market & Café located at 44 East 8th Street.  Finally, from in or around January 2022 until in or around December 2022, Plaintiff Romero returned to work at the Heavenly Market & Deli located at 77 3rd Avenue.

151.    As a general grocery and deli employee, Plaintiff Romero's duties included, without being limited to, the preparation of the food and other products sold at the deli, including

hot and cold meals, especially sandwiches, and ensuring food quality and safety. In general, Plaintiff Romero was responsible for selling the products and food to customers and helping them with questions and other information they needed about the delicatessen food.  Plaintiff Romero was also responsible for maintaining, cleaning, and sanitizing his work area.

152.    During the initial portion of the Romero Employment Period, when Plaintiff Romero worked at the 77 3rd Avenue location, Plaintiff was required to work the overnight shift seven (7) days per week, with no days off, from approximately 6:00 pm to approximately 6:00 am, twelve (12) hours shifts, for a total of approximately eighty-four (84) hours per week

153.    For the second portion of the Romero Employment Period, when Plaintiff was assigned to work at 1760 3rd Avenue location, Plaintiff Romero was required to work six (6) days per week, with most Saturdays off, from approximately 6:00 am to approximately 5:00 pm, ten (10) hour shifts, for a total of approximately sixty (60) hours per week and sometimes longer. Very often, at least once per week, Plaintiff Romero was required to work an additional five (5) to six (6) hours during his shift in order to cover for other co-workers who were late or simply resigned. Based on Plaintiff Romero's observations, all Heavenly Market and Deli locations where he was assigned to work had a high turnover due to long hour schedules and low pay rates. Also, at least once per week, Plaintiff Romero was required to work a double shift, adding numerous hours to his already busy schedule.

154.    During the third and last portion of the Romero Employment Period, when Plaintiff Romero worked at 44 East 8th Street location, he was required to work six (6) days per week, with most Saturdays off, from approximately 6:00 pm to approximately 5:00 am, ten (10) hours shifts, for a total of approximately sixty (60) hours per week.

155.    When Plaintiff Romero was assigned to work once again at the 77 3rd Avenue

location, Plaintiff Romero was required to work six (6) days per week, from approximately 6:00 am to between approximately 2:00 pm to 3:00 pm, 8-to-9-hour shifts, for a total of approximately forty-eight (48) to fifty-four (54) hours per week.

156.    Plaintiff Romero was not able to take a thirty (30) minute uninterrupted break during his shifts. If Plaintiff Romero was able to consume food at work, he usually took his food while performing work at any of the Heavenly Market and Deli locations at which he was assigned to work for Defendants.

157.    Throughout the Romero Employment Period, Defendants provided Plaintiff Romero and other employees no reliable means for tracking their hours worked. Plaintiff Romero and other employees were paid in accordance with the schedules set by Defendants.

158.    At the beginning of the Romero Employment Period, during his first period at the 77 3rd Avenue location, Plaintiff Romero was paid approximately six hundred dollars ($600.00) to seven hundred dollars ($700.00) per week. As such, Plaintiff Romero was paid below the legally-required minimum wage in New York City.

159.    During Plaintiff Romero's employment at the 1760 3rd Avenue location, Plaintiff Romero was paid approximately sixteen dollars ($16.00) per hour, for all hours worked including those beyond forty (40) in a given workweek.

160.    During Plaintiff Romero's employment at the 44 East 8th Street location, Plaintiff Romero was initially paid seventeen dollars ($17.00) per hour and, after a short period, eighteen dollars ($18.00) per hour, for all hours worked including those beyond forty (40) in a given workweek.

161.    During Plaintiff Romero's second period of employment at the 77 3rd Avenue location, Plaintiff Romero was paid at a rate of approximately twenty dollars ($20.00) per hour,

for all hours worked including those beyond forty (40) in a given workweek.

162.    Throughout the Romero Employment Period, Plaintiff Romero received his wages entirely in cash, without a pay stub or wage statement, or other similar document setting forth his gross wages, hourly rate(s), deductions made, or actual hours worked.

163.    At no time during the Romero Employment Period did Defendants provide Plaintiff Romero with a written wage notice setting forth his hourly rate(s), payday, contact information for Defendants, or any other information required by the NYLL § 198(1-b).

164.    Upon information and belief, during the Romero Employment Period at 77 3rd Avenue location, there were approximately four (4) to five (5) employees working at the location and any given time.

165.    Upon information and belief, during the Romero Employment Period at 44 East 8th Street location, there were approximately five (5) to six (6) employees working at the location stretched over two daily shifts.

166.    Upon information and belief, during the Romero Employment Period at the 1760 3rd Avenue location, there were approximately three (3) to four (4) employees present at any given time.

167.    During the Romero Employment Period, Plaintiff Romero was supervised on a daily basis by Individual Defendants G. Musleh, who he knows as "Gamal," and Individual Defendant AA. Musleh who he knows as "Ali." Both Defendants were in charge of running the businesses where he was assigned to work, supervising employees, resolving issues at the store and, in general, managing the businesses according to Defendants' rules and practices.  Plaintiff Romero frequently saw other family members help in the managing of the Heavenly Market and Deli Enterprise, but rarely had direct contact with them. Those individuals included Individual

Defendants M. Alkabadi, W. Saleh, O. Alkabadi.

168.    During the Romero Employment Period, Plaintiff Romero was frequently asked to cover shifts for absent employees at other locations.

169.    Upon information and belief, on multiple occasions, Plaintiff Romero witnessed products, inventory, and supplies being exchanged from one of Defendants' stores to another.

170.    **Plaintiff Torres** has been employed by Defendants as a general grocery and deli employee during two (2) distinct periods: the first period was from in or around 2014 through in or around 2017; and the second period was from in or around 2019 through March 9, 2025 (the "Torres Employment Period").

171.    From in or around 2014 until in or around 2017, Plaintiff Torres worked for Defendants at the 77 3rd Avenue location. During the relevant time period, from in or around 2019 until in or around 2021, Plaintiff Torres worked for Defendants at the 44 East 8th Street location. From in or around 2021 until in or around 2022, Plaintiff Torres worked for Defendants at the 384 2nd Avenue location.  From in or around 2023 until in or around January 2025, Plaintiff Torres worked for Defendants at the 296 3rd Avenue location.  Finally, from in or around January 2025 until March 9, 2025, Plaintiff Torres worked for Defendants at the 58 Carmine Street Location.

172.    As a general grocery and deli employee, Plaintiff Torres' duties included, without being limited to, the preparation of the food and other products sold at the deli, and ensuring food quality and safety. In general, Plaintiff Torres was responsible for selling the products and food to the customers and helping them with questions and other information they needed about the delicatessen food.  Plaintiff Torres was also responsible for maintaining, cleaning, and sanitizing his work area. During the time period Plaintiff Torres worked at the 77 3rd Avenue location, he was also required to make food deliveries for customers.

173.    Throughout most of the Torres Employment Period, Plaintiff Torres was required to work six (6) days per week until in or around January 2025, when Defendants cut Plaintiff Torres' work schedule down to only two (2) days per week after Plaintiff Torres disclosed to W. Saleh that he had been diagnosed with Parkinson's Disease.   When Plaintiff Torres informed Defendants about his recent diagnosis, Defendants drastically reduced his days and hours worked and limited the type of work he was allowed to perform at the deli, prompting Plaintiff Torres to cease working at the 296 3rd Avenue location, as he required full-time employment.

174.    From in or around January 2025 until March 9, 2025, Plaintiff Torres worked one (1) day per week at the 58 Carmine Street Location.

175.    During the time period Plaintiff Torres worked at the 77 3rd Avenue location, he was required to work six (6) days per week, with most Saturdays off. From Mondays through Fridays, Plaintiff Torres was required to work from approximately 10:00 am to approximately 8:00 pm, ten (10) hour shifts, and on Sundays from approximately 7:00 am to approximately 7:00 pm, 12 hour shifts, for a total of approximately sixty-two (62) hours per week.

176.    During the time period Plaintiff Torres worked at the 44 East 8TH Street location, he was required to work six (6) days per week, with most Saturdays off.  From Mondays through Fridays, Plaintiff Torres was required to work from approximately 10:00 am to approximately 8:00 pm, ten (10) hour shifts, and on Sundays from approximately 7:00 am to approximately 7:00 pm, for a total of approximately sixty-two (62) hours per week. Approximately once per week, Plaintiff Torres was required to work beyond 8:00 pm on weekdays to cover for an absent employee. During this portion of his employment, Plaintiff Torres stopped working for Defendants at the deli for a few months due to the COVID-19 pandemic.

177.    During the time period Plaintiff Torres worked at the 384 2nd Avenue location, he

was required to work six (6) days per week, with most Saturdays off. From Mondays through Fridays, Plaintiff Torres was required to work from approximately 7:00 am to approximately 4:00 pm, nine (9) hour shifts, and on Sundays from approximately 6:00 am to approximately 4:00 pm, ten (10) hour shift, for a total of approximately fifty-five (55) hours per week.

178.    During the time period Plaintiff Torres worked at the 296 3rd Avenue location, he was required to work six (6) days per week with most Sundays off.  From in or around 2023 until in or around 2024, Plaintiff Torres was required to work Mondays through Fridays from approximately 6:00 am to approximately 3:00 pm, nine (9) hours shifts, and on Saturdays from approximately 7:00 am to approximately 7:00 pm, twelve (12) hour shift, for a total of approximately fifty-seven (57) hours per week.  During 2024, Plaintiff Torres was required to work Mondays through Fridays from approximately 6:00 am to approximately 2:00 pm, eight (8) hours shifts, and on Saturdays from approximately 7:00 am to approximately 3:00 pm, eight (8) hour shift, for a total of approximately forty-eight (48) hours per week and sometimes more if he was required to cover for an absent employee, which was frequent.

179.    During the time period Plaintiff Torres worked at the 58 Carmine Street Location, he worked only on Sundays, from approximately 6:00 am to approximately 3:00 pm, for a total of nine (9) hours per week.

180.    Plaintiff Torres was not able to take a thirty (30) minute uninterrupted break during the course of his shifts. When Plaintiff Torres had the opportunity to eat, he usually consumed food while performing his work at the deli.

181.    Throughout the Torres Employment Period, Defendants provided Plaintiff Torres and other employees no reliable means for tracking their hours worked. Plaintiff Torres and other employees were paid in accordance with the schedules set by Defendants.

182.     During the time period Torres worked at the 77 3rd Avenue location, Plaintiff Torres was paid sixteen dollars and fifty cents ($16.50) per hour for all hours worked, including those beyond forty (40) in a given workweek.  During the time period Plaintiff Torres worked at the 44 East 8TH Street location, Plaintiff was paid at a rate of eighteen dollars ($18.00) per hour, for all hours worked including those beyond forty (40) in a given workweek.

183.     During the time period Torres worked at the 384 2nd Avenue location, Plaintiff was paid at a rate of twenty dollars ($20.00) per hour, for all hours worked including those beyond forty in a given workweek.  During the time period Plaintiff Torres worked at the 296 3rd Avenue location, Plaintiff was paid at a rate of twenty dollars ($20.00) dollars per hour, for all hours worked including those beyond forty (40) in a given workweek.  During this period of time, Plaintiff Torres was paid his wages inconsistently, sometimes waiting up to 2 to 3 weeks to receive his payment. Finally, during the time period Plaintiff Torres has been working at the 58 Carmine Street Location, he has been paid twenty dollars ($20.00) per hour. During the time period Plaintiff Torres worked at the locations at 77 3rd Avenue and 44 East 8th Street, Plaintiff Torres received his wages entirely in cash, without pay stub or wage statement, or other similar document setting forth his gross wages, hourly rate(s), deductions made, or actual hours worked.

184.     During the time period Plaintiff Torres worked at the locations at 384 2nd Avenue and 296 3rd Avenue, Plaintiff Torres would sometimes receive his wages in cash and sometimes by check, although always without pay stub or wage statement, or other similar document setting forth his gross wages, hourly rate(s), deductions made, or actual hours worked.

185.     During the time period Plaintiff Torres worked at the 58 Carmine Street Location, Plaintiff Torres had his wages paid by Zelle transfer, without pay stub or wage statement, or other similar document setting forth his gross wages, hourly rate(s), deductions made, or actual hours

worked.

186.    At no time during the Torres Employment Period did Defendants provide Plaintiff Torres with a written wage notice setting forth his hourly rate(s), payday, contact information for Defendants, or any other information required by the NYLL § 198(1-b).

187.    During Plaintiff Torres' employment at the 44 East 8TH Street location, there were approximately nine (9) employees at any given time.  During the time period Plaintiff Torres worked at the 384 2nd Avenue location, there were approximately five (5) employees working at the deli and any given time.  During the time period Plaintiff Torres worked at the 296 3rd Avenue location, there were approximately seven (7) employees working at the deli at any given time.

188.    During the time period Plaintiff Torres worked at the 77 3rd Avenue location, he was mainly supervised by Individual Defendant AA. Musleh, although sometimes several of the other Individual Defendants would help out at the business.  During the time period Plaintiff Torres worked at the 44 East 8TH Street location, Plaintiff was mainly supervised by Individual Defendant M. Musleh.  During the time period Plaintiff Torres worked at the 384 2nd Avenue location, he was supervised mainly by Individual Defendant M. Alkabadi. At the beginning of Plaintiff Torres employment at the 296 3rd Avenue location, Plaintiff Torres was mainly supervised by Individual Defendant M. Alkabadi.  After a year or so at the 296 3rd Avenue location, M. Alkabadi was replaced by Individual Defendant W. Saleh as Plaintiff Torres' direct supervisor. During the time period Plaintiff Torres has been working at the 58 Carmine Street Location, Plaintiff has been supervised by Individual Defendant AA. Saleh.

189.    **Plaintiff Revilla** was employed by Defendants as a general grocery and deli employee from in or around early summer 2018 to in or around October 2023, with the exception of two (2) weeks in or around February 2023, when he was waiting for the new assignment from

Defendants to a new location (the "Revilla Employment Period"). Plaintiff was known by Defendants as "Fernando."

190.    From in or around early summer 2018 until in or around February 2023, Plaintiff Revilla worked for Defendants at the Heavenly Market & Café located at 44 East 8th Street. From in or around March 2023 until in or around October 2023, Plaintiff Revilla worked for Defendants at "Heavenly Finest Deli" located at 240 Sullivan Street, New York, New York 10012.

191.    As a general grocery and deli employee, Plaintiff Revilla's duties included, without being limited to, the preparation of the food and other products sold at the deli, hot and cold meals, especially sandwiches, and ensure food quality and safety. In general, Plaintiff Revilla was responsible for selling the products and food to the customers and helping them with the questions and other information they needed about the delicatessen food. Plaintiff Revilla was also responsible for maintaining, cleaning, and sanitizing his work area.

192.    During the time period Plaintiff Revilla worked at the 44 East 8th Street location, from in or around 2018 to in or around 2019, for approximately one (1) year, Revilla was required to work six (6) days per week, with most Sundays off, from approximately 11:00 am to approximately 9:00 pm, ten (10) hour shifts on weekdays, and from approximately 7:00 am to approximately 7:00 pm on Saturdays, twelve (12) hours shifts, for a total of approximately sixty-two (62) hours per week.

193.    From in or around 2019 to in or around 2021, while Plaintiff was still assigned at the 44 East 8th Street Location, Revilla was required to work six (6) days per week, with most Sundays off, from approximately 7:00 am to approximately 4:00 pm, nine (9) hours shifts on weekdays, and from approximately 7:00 am to approximately 7:00 pm, twelve (12) hours shifts on Saturdays, for a total of approximately fifty-seven (57) hours per week. Finally, from in or around

2021 to in or around February 2023, Revilla was required to work six (6) days per week, with most Sundays off, from approximately 6:00 am to approximately 3:00 pm, nine (9) hours shifts on weekdays, and from approximately 7:00 am to approximately 7:00 pm, twelve (12) hours shifts on Saturdays, for a total of approximately fifty-seven (57) hours per week.

194.    During the time period Plaintiff Revilla was assigned to the 240 Sullivan Street Location, Revilla was required to work six (6) days per week, with most Sundays off, from approximately 6:00 am to approximately 3:00 pm, nine (9) hours shifts, for a total of approximately fifty-four (54) hours per week.

195.    Throughout the Revilla Employment Period, Defendants provided Plaintiff Revilla and other employees no reliable means for tracking their hours worked. Plaintiff Revilla and other employees were paid in accordance with the schedules set by Defendants.

196.    During the time period Revilla was assigned to work at the 44 East 8th Street Location, Plaintiff was paid per hour. From in or around 2018 to in or around 2019, Revilla was paid twelve dollars ($12.00) per hour, for all hours worked including those beyond forty (40) in a given workweek, From in or around 2019 to in or around 2020, Revilla was paid thirteen dollars ($13.00) per hour for all hours worked, including those beyond forty (40) in a given workweek. As such, during this period Plaintiff Revilla was paid below the legally-required minimum wage in New York City.

197.    From in or around late 2020 to in or around 2021, Revilla was paid seventeen dollars ($17.00) per hour, for all hours worked including those beyond forty (40) in a given workweek.  From in or around 2021 to in or around 2022, Revilla was paid twenty-one dollars ($21.00) dollars per hour, for all hours worked including those beyond forty (40) in a given workweek,  Finally, from in or around 2022 to in or around February 2023, while Plaintiff Revilla

was still assigned to the 44 East 8th Street Location, Revilla was paid at a rate of twenty-two dollars ($22.00) per hour, for all hours worked including those beyond forty (40) in a given workweek.

198.    When Plaintiff Revilla was assigned to the 240 Sullivan Street Location, from in or around March 2023 to in or around August 2023, Plaintiff was paid at a rate of twenty-one dollars ($21.00) per hour.  From in or around August 2023 to the end of his employment period in or around October 2023, Revilla was paid twenty-two ($22.00) dollars per hour, for all hours worked including those beyond forty (40) in a given workweek.

199.    Throughout the Revilla Employment Period, Plaintiff Revilla received his wages entirely in cash, without pay stub or wage statement, or other similar document setting forth his gross wages, hourly rate(s), deductions made, or actual hours worked.

200.    At no time during the Revilla Employment Period did Defendants provide Plaintiff Revilla with a written wage notice setting forth his hourly rate(s), payday, contact information for Defendants, or any other information required by the NYLL § 198(1-b).

201.    During the Revilla Employment Period at the 44 East 8th Street Location, Plaintiff Revilla was supervised daily by Individual Defendant M. Musleh who he knows as "Mohamed" until in or around 2021. For the remaining period at the location he was supervised by other individuals he knows as "Jihar," "Edif," and "Ali.".  Those individuals were the ones responsible for paying employees, giving them orders, determining employee schedules, supervising employee work, and resolving issues with vendors. Overall, M. Musleh and A. Saleh were responsible for managing the day-to-day business and running the Heavenly Market and Deli location according to Defendants' rules and practices.

202.    During the Revilla Employment Period at the 240 Sullivan Street Location, Plaintiff Revilla was supervised daily by Individual Defendant O. Alkabadi who he knows as "Omar." O.

Alkabadi was responsible for paying employees, giving them orders, determining employee schedules, supervising employee work, and resolving issues with vendors. Overall, O. Alkabadi was responsible for managing the day-to-day business and running the Heavenly Market and Deli location according to Defendants' rules and practices.

203.    **Plaintiff Bourhim** was employed by Defendants as a general grocery and deli employee and cashier from in or around October 2024 to in or around May 1, 2025, when she was terminated as a result of an act of retaliation from Defendants (the "Bourhim Employment Period").

204.    Throughout the Bourhim Employment Period, Bourhim was assigned to work for Defendants at "Heavenly Food Market" located at 311 11th Avenue, New York, New York 10001.

205.    As a general grocery and deli employee and cashier, Plaintiff Bourhim's duties included, without being limited to, handling customer transactions, providing customer service to clients and patrons at the market/deli, and ensuring a clean and organize checkout area. Plaintiff Bourhim was responsible for operating the cash register, processing cash, credit and debit payments, answering customer questions regarding the market/deli services, and assisting with basic inventory and restocking duties. In addition to her regular duties as a cashier, Defendants on a regular basis required Plaintiff Bourhim to assist with other obligations at the market/deli such as smoothie preparation, disposing expired items from shelves, helping with the process of pricing products at the market, and preparing and packing prescription orders. Defendants also on numerous occasions asked Plaintiff Bourhim to help at the bakery of the market, but Plaintiff refused to comply with the request due to the additional burden of those obligations.

206.    At the beginning of the Bourhim Employment Period, from in or around October 2024 to in or around December 2024, Bourhim was required to work six (6) days per week with

most Wednesdays off.  Bourhim was required to work Mondays to Fridays and on Sundays, from approximately 7:00 am to approximately 2:00 pm, seven (7) hours shifts, and from approximately 7:00 am to approximately 7:00 pm, twelve (12) hours shifts on Saturdays, for a total of approximately forty-seven (47) hours per week, and sometimes more if she was required to cover for absent employees, which was a frequent occurrence. During this period it was frequent that Plaintiff was required to work up to fifty-seven (57) hours per week.

207.    From late December 2024 until the end of the Bourhim Employment Period, Plaintiff Bourhim was required to work six (6) days per week, with most Wednesdays off, from approximately 7:00 am to approximately 2:00 pm, seven (7) hours shifts, for a total of approximately forty-two (42) hours per week and sometimes more if she was required to cover for an absent employee.  On occasions, once or twice during Bourhim Employment Period, Plaintiff Bourhim was required to work five (5) days per week.

208.    At the beginning of the Bourhim Employment Period, Plaintiff Bourhim was not provided with a reliable method to track her hours worked at Defendants' location.  From in or around January 2025 to the end of her employment period on May 1, 2025, Plaintiff Bourhim was required to use a finger scanner to track the hours worked at the market/deli.  Upon information and belief, hours tracked through this system were frequently edited by Defendants to show less hours worked during the week.

209.    Throughout the Bourhim Employment Period, Plaintiff Bourhim was allowed most of the time to take a 30-minute uninterrupted break during the course of her shifts.  However, at least once or twice per week, those breaks were interrupted by Defendants and did not last more than 15 to 20 minutes in a day.  In or around the end of April 2025, Defendants informed Plaintiff and other employees at the market, that they were implementing a new policy of auto-deducting

from the total hours worked, 30-minute of break for each day of work, no matter if the employee was able to take or not the uninterrupted break during the shift.

210.    Throughout the Bourhim Employment Period, Plaintiff Bourhim was paid per hour. From in or around October 2024 to in or around December 2024, Plaintiff Bourhim was paid at a rate of sixteen ($16.00) dollars per hour, for all hours worked including those beyond forty (40) in a given workweek.  From in or around January 2025 to in or around May 2025, Plaintiff Bourhim was paid at a rate of sixteen dollars and fifty cents ($16.50) per hour, for all hours worked including those beyond forty (40) in a given workweek.

211.    Throughout the Bourhim Employment Period, Plaintiff Bourhim was paid in a combination of cash and direct deposit.  Plaintiff Bourhim received the equivalent of forty (40) hours of work via direct deposit and the amount paid for the overtime hours worked in a given workweek, in cash. Plaintiff received her wages without a pay stub or wage statement, or other similar document setting forth her gross wages, hourly rate(s), deductions made, or actual hours worked.

212.    At no time during the Bourhim Employment Period did Defendants provide Plaintiff Bourhim with a written wage notice setting forth her hourly rate(s), payday, contact information for Defendants, or any other information required by the NYLL § 198(1-b).

213.    During the Bourhim Employment Period at the 311 11th Avenue Location, Plaintiff Bourhim was supervised on a daily basis by Individual Defendant M. Musleh who she knows as "Mohamed" in the mornings, and by AA. Musleh who she knows as "Ali" during the afternoon. Those individuals were the ones responsible for paying employees, giving them orders, determining employee schedules, supervising employee work, and resolving issues with vendors. Overall, M. Musleh and AA. Musleh were responsible for managing the day-to-day business and

running the Heavenly Market and Deli location according to Defendants' rules and practices.

214.    During Plaintiff Bourhim's employment at the 311 11th Avenue Location, there were approximately fifteen (15) to twenty (20) employees at any given time.

**Additional Factual Allegations**

215.    Throughout the Bourhim Employment Period, Plaintiff Bourhim complained numerous times to Defendants about her unpaid sick days, unpaid overtime premiums, and during the last portion of her employment, the Defendants' new policy of auto-deducting 30-minutes of time during the course of the employees' shifts, despite the fact that Plaintiff Bourhim and other employees at the market/deli, were not able to take on a daily basis an uninterrupted 30-minute of break to rest or eat their meals.

216.    Despite Plaintiff Bourhim's repeated complaints, Defendants failed to remedy or properly address any of these issues, nor did Defendants change their unlawful policies and/or practices which lead to such issues.

217.    As a result of Plaintiff Bourhuim's complaints and Defendants' failure to change their corporate practices or provide Plaintiff Bourhim with an appropriate response, Plaintiff Bourhim was forced to seek legal advice to confirm whether Defendants' practices were lawful.

218.    After a conversation with counsel on April 30th, 2025, Plaintiff Bourhim confided with one of her former co-workers, "Maria," who regularly worked numerous overtime hours per week and who is paid in the same fashion, that practices at the market/deli were in violation of the employment regulations in New York and that they should pursue a claim against Defendants. Plaintiff Bourhim even told "Maria" that she already found a law firm who could represent them against Defendants.

219.    Unfortunately, immediately after that conversation, Plaintiff Bourhim's co-worker,

"Maria," informed Defendants about the details of the conversation and Plaintiff Bourhim's intention to file an action against Defendants. Immediately after being informed by "Maria" of Plaintiff Bourhim's intentions, and as a result of such conversation, Plaintiff Bourhim was immediately fired by M. Musleh and AA. Musleh via telephone on the morning of May 1, 2025.

### Defendants' Unlawful Corporate Policies

220.    Throughout the relevant time period, as set forth above, Defendants failed to pay Plaintiffs Islas, Romero, Cuazitl, Revilla, and members of the Class and Collective, at least the New York State minimum wage for all hours worked.

221.    As a result of Defendants' policy of paying low hourly wages at straight-time rates, at no time during the relevant time period did Plaintiffs and the Class and Collective Members receive overtime premium pay consisting of one and one-half (1.5) times their regular hourly rate for all hours worked in excess of forty (40) hours per week, nor did they receive spread of hours premium pay consisting of one (1) extra hour's pay at the applicable minimum wage for days that they worked in excess of ten (10) hours per day, which they regularly did.

222.    At no time during the relevant time period did Defendants provide Plaintiffs and the Class and Collective Members with an accurate paystub or wage statement with the weekly payment of wages showing their true effective hourly rate(s), any deductions or withholdings taken by Defendants and their true hours worked.

223.    At no time during the relevant time period did Defendants provide Plaintiffs and the Class and Collective Members with a written wage notice or notice of tip credit setting forth their regular hourly rate(s), their regular payday, any deductions or credits claimed by Defendants, any explanation of the tip credit, or any of the information required by NYLL § 198(1-b).

224.    As a consequence of Defendants' willful conduct by not providing to Plaintiffs and

the Collective and Class Members wage statements and wage notices as per New York regulations, Plaintiffs and the Collective and Class Members suffered concrete harm and were prevented to confirm if Defendants were paying employees the amounts required by the law, advocate for better wages, and determine if there were discrepancies between the wages received and the wages indicated at the moment of hiring.

225.    In failing to provide the required wage notices and wage statements, Defendants have failed to comply with the law in a manner that clearly entails a concrete risk of harm to an interest identified by the New York State legislature. The New York legislature concluded that enacting the wage notice requirement would "far better protect workers' rights and interests" than existing penalties. *See* N.Y. Spons. Mem., 2010 S.B. 8380. Written notices function as a means of apprising employees of their rights and of their employer's obligations towards them, empowering employees to advocate for themselves. Deprivation of such notices necessarily entails a significant risk of harm to the employees' concrete interest in being paid properly.

226.    Due to Defendants' failure to properly provide legally mandated notices such as an on-hire wage notice and weekly wage statements, Defendants were able to conceal the existence and magnitude of their wage and hour violations from Plaintiffs and the Collective and Class Members. This resulted in the delayed payment of all proper wages to Plaintiffs and the Collective and Class Members. Specifically, Defendants' failure to properly inform Plaintiffs, Collective and Class Members of their overtime pay rate and accurately account for all hours worked by Plaintiffs in weekly wage statements prevented Plaintiffs and the Collective and Class Members from comprehending the existence and magnitude of the violations alleged herein to which they were subjected by Defendants. As a result, Plaintiffs and the Collective and Class Members were unable to promptly seek rectification of these wage and hour violations and thus endured significant

underpayment of their wages throughout their employment by Defendants.

227.   As a result of the above, Plaintiffs have suffered concrete, downstream consequences stemming from Defendants' failure to provide the required wage notices and wage statements.  Due to Defendants' failure to provide Plaintiffs with notice of their overtime hourly rates and include all hours worked and the proper overtime rate for such hours on weekly wage statements issued to Plaintiffs, Plaintiffs were unaware that they were being substantially underpaid throughout their employment.

228.   Because Plaintiffs were not properly apprised of their wage rates and hours, Plaintiffs lacked the ability to determine whether or not they had been underpaid in violation of law.  This ultimately lead to the continued underpayment of Plaintiffs' required wages, which in turn made it difficult for Plaintiffs to pay bills and debts, as well as make other necessary purchases.

229.   Plaintiffs and the Class and Collective Action Members were all paid pursuant to the same corporate policies of Defendants, including failing to pay minimum wages and overtime premiums, failure to pay spread of hours premiums, and failing to provide wage notices and wage statements.

230.   Plaintiffs have spoken with and are aware of other employees of Defendants who were similarly paid low hourly rates for all hours worked, such that they were paid below the legally-required minimum wage and did not receive overtime premiums when they worked in excess of forty (40) hours per week or spread-of-hours premiums when they worked in excess of ten (10) hours in a day. Defendants' failure to pay minimum wages, overtime premiums and spread-of-hours premiums are corporate policies of Defendants that apply to all non-management employees throughout the relevant time period at all locations that are part of the Heavenly Market

and Deli Enterprise.

231.    Plaintiffs have spoken with and are aware of other employees of Defendants who did not receive required wage notices or wage statements. Defendants' failure to provide wage notices and wage statements is a corporate policy of Defendants that applied to all non-management employees who worked for Defendants at any of the Heavenly Market and Deli locations in New York throughout the relevant time period.

232.    Upon information and belief, throughout the relevant time period and continuing until today, Defendants failed to maintain accurate and sufficient time and payroll records or provide such records to employees.

## FIRST CAUSE OF ACTION
## FAIR LABOR STANDARDS ACT – UNPAID OVERTIME
### (Brought on Behalf of Plaintiffs and the Collective Action Members)

233.    Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

234.    By failing to pay overtime at a rate not less than one and one-half (1.5) times the regular rate of pay for all work performed in excess of 40 hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

235.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

236.    Defendants' failure to pay overtime caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiffs and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages

for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
### NEW YORK LABOR LAW – UNPAID MINIMUM WAGE
**(Brought on Behalf of Plaintiffs Islas, Romero, Cuazitl, Revilla and the Class Members)**

237.    Plaintiffs Islas, Romero, Cuazitl, and Revilla, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

238.    Defendants willfully violated Plaintiffs Islas, Romero, Cuazitl, and Revilla, and the Class Members' rights by failing to pay at least the statutory minimum wage for all hours worked, in violation of the NYLL and regulations promulgated thereunder.

239.    Defendants' failure to pay minimum wage for all hours worked caused Plaintiffs Islas, Romero, Cuazitl, and Revilla and the Class Members to suffer loss of wages and interest thereon. Plaintiffs Islas, Romero, Cuazitl, and Revilla and the Class Members are entitled to recover from Defendants their unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

## THIRD CAUSE OF ACTION
### NEW YORK LABOR LAW – UNPAID OVERTIME
**(Brought on Behalf of Plaintiffs and the Class Members)**

240.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

241.    Defendants willfully violated Plaintiffs and the Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half (1.5) times the regular rate

of pay for all hours worked in excess of 40 each week, in violation of the NYLL and regulations promulgated thereunder.

242.    Defendants' failure to pay overtime premium compensation caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon.  Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**FOURTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID SPREAD-OF-HOURS**
**(Brought on Behalf of Plaintiffs and the Class Members)**

243.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

244.    Defendants willfully violated Plaintiffs and Class Members' rights by failing to pay compensation in an amount equal to one hour's pay at the relevant minimum wage in all instances where the Plaintiffs and Class Members worked either a split shift or more than ten (10) hours per day, in violation of the NYLL §§ 650, et seq., and the regulations promulgated thereunder including N.Y. Comp. Code R. & Regs. tit. 12, §§ 137-1.7 (2010), 146-1.6 (2012).

245.    Defendants' failure to pay spread-of-hours compensation caused Plaintiffs and Class Members to suffer loss of wages and interest thereon.  Plaintiffs and Class Members are entitled to recover from Defendants their unpaid spread-of-hours compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**FIFTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE NOTICES**
**(Brought on Behalf of Plaintiffs and the Class Members)**

246.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

247.    Defendants have willfully failed to supply Plaintiffs and the Class Members notice as required by Article 6, § 195, in English or in the language identified by Plaintiffs and the Class Members as their primary language, containing Plaintiffs' and Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay, if applicable;  the regular pay day designated by the employer in accordance with the NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer' the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

248.    Due to Defendant's violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants fifty dollars ($50.00) per employee for each day that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per employee, as provided for by NYLL, Article 6, §§ 190, *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

**SIXTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE STATEMENTS**
**(Brought on Behalf of Plaintiffs and the Class Members)**

249.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

250.    Defendants have willfully failed to supply Plaintiffs and Class Members with an accurate statement of wages as required by NYLL, Article 6, § 195, containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

251.    Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants two hundred and fifty dollars ($250.00) per employee for each day that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per employee, as provided for by NYLL, Article 6, §§ 190 *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

**SEVENTH CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – RETALIATION**
**(Brought on Behalf of Plaintiff Fnina Bourhim)**

252.    Plaintiff Bourhim, on behalf of herself, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

253.     Plaintiff Bourhim complained to Defendants about their failure to provide her with required sick pay, overtime premium payments, and proper lunch breaks, and confided with a co-worker about the violations and her intention to pursue the claims in court.  In spite of these complaints, Defendants failed to comply with the applicable laws and regulations, and instead of trying to correct their wrongdoing, they opted instead to unlawfully fire Plaintiff Bourhim for lawfully exercising her legal rights.

254.     Plaintiff Bourhim's actions constituted protected activity under the FLSA.

255.     The Defendants and all of their agents unlawfully retaliated against Bourhim by terminating Plaintiff Bourhim's employment.

256.     By the acts described here, and other acts, which are ongoing as of the filing of this Complaint, Defendants and all their agents have unlawfully reduced the income of Plaintiff Bourhim, thus violating 29 U.S.C. § 215(a)(3).

257.     Plaintiff Bourhim has suffered damages, including but not limited to loss of wages, punitive damages and interest.

258.     As a result of the conduct of Defendants and their agents, Plaintiff Bourhim is entitled to monetary relief, including, but not limited to the recovery of compensatory and other damages, reasonable attorney's fees and costs, punitive damages, and other appropriate relief.

### EIGHTH CAUSE OF ACTION
### RETALIATION IN VIOLATION OF NYLL
**(Brought on Behalf of Plaintiff Fnina Bourhim)**

259.     Plaintiff Bourhim, on behalf of herself, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

260.    Plaintiff Bourhim attempted to enforce her rights by complaining about Defendants' failure to provide her with required sick pay, overtime premiums, and a full 30-minute meal break pursuant to the NYLL.

261.    Plaintiff's actions constituted protected activity under NYLL § 215.

262.    Defendants and their agents unlawfully retaliated against Plaintiff Bourhim by terminating her employment immediately after learning of Plaintiff Bourhim's intention to enforce her rights under the law.  By the acts described herein, and other acts, which are ongoing as of the filing of this Complaint, the Defendants and their agents have unlawfully reduced the income of Plaintiff Bourhim, thus violating NYLL § 215.

263.    Plaintiff Bourhim has suffered damages, including but not limited to loss of wages, punitive damages and interest.

264.    As a result of the conduct of Defendants and their agents, Plaintiff Bourhim is entitled to monetary relief, including, but not limited to the recovery of compensatory and other damages, reasonable attorney's fees and costs, punitive damages, and other appropriate relief.

## <u>PRAYER FOR RELIEF</u>

Wherefore, Plaintiffs, on behalf of themselves and all other similarly situated Class and Collective Action Members, respectfully request that this Court grant the following relief:

a.    Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiffs and their counsel to represent the Collective Action Members;

b.  Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the Class Members and appointing Plaintiffs and their counsel to represent the Class;

c.  An order tolling the statute of limitations;

d.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

e.  An injunction against Defendants, their officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f.  An award of compensatory damages as a result of Defendants' failure to pay overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

g.  An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

h.  An award of compensatory damages as a result of Defendants' failure to pay minimum wage for all hours worked pursuant to the NYLL and supporting regulations;

i.  An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay minimum wage pursuant to the NYLL and supporting regulations;

j.  An award of actual and liquidated damages for the non-payment of spread-of-hours pay for each split shift and/or shift worked in New York in excess of ten (10) hours;

k.  An award of fifty dollars ($50.00) per Plaintiff and each of the Class Members for each day that the violations of NYLL, Article 6 § 195(1) occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-b;

l.  An award of two hundred and fifty dollars ($250.00) per Plaintiff and each of the Class Members for each day that the violations of NYLL, Article 6 § 195(3) occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-d;

m.  An award of compensatory economic, non-economic and punitive damages as to Plaintiff Bourhim, arising out of Defendants' unlawful retaliation against Bourhim pursuant to the FLSA and the NYLL;

n.  An award of back wages and future lost wages arising out of Defendants' illegal retaliation against Plaintiff Bourhim pursuant to the FLSA and the NYLL;

o.  An award of prejudgment and post-judgment interest;

p.  An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

q.  Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.

Dated:  New York, New York
       May 5, 2025

                               Respectfully submitted,

                               **PELTON GRAHAM LLC**

By: _____
Brent E. Pelton
Taylor B. Graham
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
Email: pelton@peltongraham.com
            graham@peltongraham.com

                               **STEPHEN D. HANS & ASSOCIATES P.C.**

By: _____
Stephen D. Hans
Nils C. Shillito
30-30 Northern Blvd., Suite 401
Long Island City, New York 11101
Telephone: (718) 275 6700
Email: shans@hansassociates.com
            nshillito@hansassociates.com

*Attorneys for Plaintiffs and the putative*
*FLSA Collective and the Class*

**Notice of Shareholder Liability for Services Rendered
Pursuant to § 630 of the Business Corporation Law of New York**

Pursuant to the provisions of § 630 of the Business Corporation Law of New York ("NYBCL"), the ten (10) largest shareholders of **89TH MARKET INC., 8TH STREET MARKET CORP, HEAVENLY MARKET INC. I, 22 2nd AVENUE FOOD MARKET CORP., HEAVENLY MARKET IV INC., HEAVENLY FOOD MARKET 11TH AVENUE, INC., HEAVENLY MARKET SULLIVAN INC., and DOES NO. 1 through NO. 20,** are hereby notified that the plaintiffs in this matter, individually and on behalf of the putative FLSA collective and class they seek to represent, intend to enforce your personal liability, as the ten (10) largest shareholders **89TH MARKET INC., 8TH STREET MARKET CORP, HEAVENLY MARKET INC. I, 22 2nd AVENUE FOOD MARKET CORP., HEAVENLY MARKET IV INC., HEAVENLY FOOD MARKET 11TH AVENUE, INC., HEAVENLY MARKET SULLIVAN INC., and DOES NO. 1 through NO. 20,** and to charge you with indebtedness of said corporation to the plaintiffs for services performed for the corporation as employees during the six (6)-year period preceding the filing of the complaint.

Dated: May 5, 2025

_BEP_
_____
Brent E. Pelton, Esq.

*Attorneys for Plaintiffs and the putative
FLSA Collective and Class*

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of **Heavenly Deli Enterprise, 89th Market Inc., 8th Street Market Corp., et al** and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime wages and minimum wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

_____          _____
Signature                                                      Printed Name

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal en mi nombre y representación en contra de el conglomerado comercial **Heavenly Deli Enterprise, 89th Market Inc., 8th Street Market Corp., et al** y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados para que me sean pagados las horas extras y los salarios mínimos tal como lo requieren las normas estatales y/o federales e igualmente autorizo la presentación de este consentimiento en la acción(es) con el fin de debatir la conducta ilegal. Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que, si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos inicialmente de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

5/1/25
_____          _____
Firma                                                         Nombre Escrito

This is a complete and accurate translation of the English "Consent to Become a Party Plaintiff" form above.

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Heavenly Deli, East Side Market or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime wages and minimum wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as a representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC and Stephen Hans Esq. without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

_____                    _____
Signature                                          Printed Name

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal en mi nombre y representación en contra de Heavenly Deli, East Side Market y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados para que me sean pagados las horas extras y los salarios mínimos tal como lo requieren las normas estatales y/o federales e igualmente autorizo la presentación de este consentimiento en la acción(es) con el fin de debatir la conducta ilegal. Yo autorizo ser nombrado como demandante representativo en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC y Stephen Hans Esq. sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que, si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos inicialmente de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

_____                    _____
Firma                                              Nombre Escrito

*Enrique Romero*

This is a complete and accurate translation of the English "Consent to Become a Party Plaintiff" from above.

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Heavenly Deli, East Side Market or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime wages and minimum wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as a representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC and Stephen Hans Esq. without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

_____                                     _____

Signature                                                                   Printed Name

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal en mi nombre y representación en contra de Heavenly Deli, East Side Market y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados para que me sean pagados las horas extras y los salarios mínimos tal como lo requieren las normas estatales y/o federales e igualmente autorizo la presentación de este consentimiento en la acción(es) con el fin de debatir la conducta ilegal. Yo autorizo ser nombrado como demandante representativo en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC y Stephen Hans Esq. sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que, si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos inicialmente de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

_____                                     _____

Firma                                                                       Nombre Escrito

This is a complete and accurate translation of the English "Consent to Become a Party Plaintiff" from above.

Docusign Envelope ID: 6559D411-6609-4789-BF48-FACAE0D66726

Fnina Bourhim – Retainer Agreement
Page **7** of **7**

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of **Heavenly Deli Enterprise, 89TH Market Inc., 8TH Street Market Corp., Heavenly Food Market 11TH Avenue Inc., et al** and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime wages and minimum wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

Signed by:

_____
Signature
4892300EA3BA447...

_____
Fnina Bourhim
Printed Name

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Heavenly Deli, East Side Market or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime wages and minimum wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as a representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC and Stephen Hans Esq. without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

_____                    _____
Signature                                           Printed Name

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal en mi nombre y representación en contra de Heavenly Deli, East Side Market y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados para que me sean pagados las horas extras y los salarios mínimos tal como lo requieren las normas estatales y/o federales e igualmente autorizo la presentación de este consentimiento en la acción(es) con el fin de debatir la conducta ilegal. Yo autorizo ser nombrado como demandante representativo en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC y Stephen Hans Esq. sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que, si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos inicialmente de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

_____                    _____
(Firma)                                             Nombre Escrito

This is a complete and accurate translation of the English "Consent to Become a Party Plaintiff" from above.

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of **Heavenly Deli Enterprise, Heavenly Delicatessen Market, Ltd., 8th Street Market Corp., Heavenly Food Market Corp., Heavenly Finest Deli, Inc. I, et al** and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime wages and minimum wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC and Stephen D. Hans & Associates, P.C. without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

_____          _____
Signature                                         Printed Name

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal en mi nombre y representación en contra de el conglomerado comercial **Heavenly Deli Enterprise, Heavenly Delicatessen Market, Ltd., 8th Street Market Corp., Heavenly Food Market Corp., Heavenly Finest Deli, Inc. I, et al** y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados para que me sean pagadas las horas extras y los salarios mínimos tal como lo requieren las normas estatales y/o federales e igualmente autorizo la presentación de este consentimiento en la acción(es) con el fin de debatir la conducta ilegal. Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC y Stephen D. Hans & Associates, P.C. sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que, si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos inicialmente de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

_____          _____
Firma                                               Nombre Escrito

This is a complete and accurate translation of the English "Consent to Become a Party Plaintiff" form above.

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Heavenly Deli, East Side Market or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime wages and minimum wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as a representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC and Stephen Hans Esq. without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

_____                                _____
Signature                                                              Printed Name

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal en mi nombre y representación en contra de Heavenly Deli, East Side Market y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados para que me sean pagados las horas extras y los salarios mínimos tal como lo requieren las normas estatales y/o federales e igualmente autorizo la presentación de este consentimiento en la acción(es) con el fin de debatir la conducta ilegal. Yo autorizo ser nombrado como demandante representativo en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC y Stephen Hans Esq. sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que, si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos inicialmente de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

_Antonio I.B._                                                    _Jose Antonio I.P._
Firma                                                                   Nombre Escrito

This is a complete and accurate translation of the English "Consent to Become a Party Plaintiff" from above.